UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PAULA LABAU,                          )     Case No. EDCV 04-1460-JTL
                                      )
                 Plaintiff,           )
                                      )
                                      )     MEMORANDUM OPINION AND ORDER
          v.                          )
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of Social               )
Security,                             )
                                      )
                 Defendant.           )
_____)

**PROCEEDINGS**

On November 30, 2004, Paula Labau ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of plaintiff's application for supplemental security income benefits.  On December 28, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on June 1, 2005, defendant filed an Answer to Complaint.  On August 12, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

**BACKGROUND**

On May 15, 2001, plaintiff filed an application for social security disability and supplemental security income benefits. (Administrative Record ["AR"] at 106-08).  Plaintiff alleged that beginning on April 18, 2001, she was unable to work because she suffered from emphysema and asthma.  (AR at 115, 257).  The Commissioner denied plaintiff's application for benefits both initially and on review.  (AR at 65-66, 67-70, 75-78).

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 79).  On November 19, 2002, the ALJ conducted a hearing in San Bernardino, California.  (AR at 29-64).  At the continued hearing, plaintiff appeared with her counsel and testified.  (AR at 31-55).  Alan Ey, a vocational expert, also appeared and testified.  (AR at 55-63).

On January 28, 2003, the ALJ issued his decision denying benefits.  (AR at 15-19).  In his decision, the ALJ concluded that plaintiff suffered from severe musculoskeletal and respiratory impairments, but these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.  (AR at 16).  The ALJ determined that plaintiff was unable to perform her past relevant work, but retained the residual functional capacity to perform "a narrow range of sedentary work."  (Id.).  Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act.  (AR at 18).

///

///

Plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision. (AR at 12). The Appeals Council subsequently affirmed the ALJ's decision. (AR at 3-5). After plaintiff appealed the matter to this Court, the parties stipulated to a remand to allow the ALJ to address an MRI report dated October 1, 2002, update plaintiff's medical records, obtain vocational expert evidence, and issue a new decision. (AR at 302-03). On June 8, 2004, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ pursuant to the Stipulation for Remand. (AR at 297-98).

On August 25, 2004, the ALJ conducted a hearing in San Bernardino, California, pursuant to the Order of the Appeals Council. (AR at 277-95). Plaintiff's counsel appeared at the hearing. (AR at 280). Samuel Landau, M.D., a medical expert, appeared and testified. (AR at 280-87, 291-93). Louis Mas, a vocational expert, also appeared and testified. (AR at 287-90, 293-93). On September 8, 2004, the ALJ issued his decision denying benefits. (AR at 256-62). In his decision, the ALJ concluded that plaintiff suffered from the following impairments, which are severe in combination: morbid obesity, degenerative disc disease of the cervical spine with associated pain, chronic obstructive pulmonary disease, and lacunar infarct with mild right hemiparesis. (AR at 258). According to the ALJ, however, these impairments did not meet or equal a Listed Impairment. (Id.). Based on the testimony of the vocational expert, Mr. Mas, the ALJ determined that plaintiff was able to perform her past relevant work as a telemarketer. (AR at 261). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

**PLAINTIFF'S CLAIMS**

Plaintiff makes the following claims in the Joint Stipulation:

1.    The ALJ failed to properly consider all the medical evidence.

2.    The ALJ failed to properly consider all the vocational evidence.

3.    The ALJ failed to consider plaintiff's subjective complaints and properly assess her credibility.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///

///

4

**DISCUSSION**

**A.   THE ALJ'S REVIEW OF THE MEDICAL EVIDENCE**

In her first claim, plaintiff contends that the ALJ failed to consider all of the evidence in plaintiff's medical records. First, plaintiff faults the ALJ for failing to explain the weight he assigned to plaintiff's Magnetic Resonance Imaging ("MRI") report. Second, plaintiff claims that the ALJ improperly disregarded plaintiff's testimony regarding pain, numbness, and weakness to her left upper extremity. Plaintiff also asserts that the ALJ failed to give weight to the medical expert's testimony that plaintiff's gastroesophageal reflux disease might be causing her coughing. Finally, plaintiff alleges that the ALJ ignored competent evidence in the record regarding plaintiff's sleep apnea.

**1.   The ALJ's Review of the Medical Records Regarding Plaintiff's MRI Results**

On October 1, 2002, plaintiff had an MRI of her cervical spine performed. The conclusion was degenerative disc disease at C4-5 and C5-6 with moderate to severe central canal and left neuroforaminal stenosis. (AR at 227). Although the ALJ referenced the MRI in his September 2004 decision, plaintiff contends that the ALJ failed to sufficiently explain the extent to which he considered the MRI.

Instead, the ALJ referred to the findings and observations of Dr. Landau, the medical expert who testified at the hearing. (AR at 260). Among other things, Dr. Landau testified that an electrodiagnostic study performed in September 2002, which indicated no radiculopathy or other significant neurological involvement, contradicted the October 2002 MRI results. (AR at 282). The ALJ did

not address Dr. Landau's observations regarding the MRI in his decision.

Plaintiff and the Commissioner stipulated to a remand, in part, to allow the ALJ to specifically address the October 1, 2002 MRI report. (AR at 302-03).   In cases remanded by the Appeals Council, the ALJ is directed to "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."   20 C.F.R. § 404.977(b). Here, while the ALJ notes that he found Dr. Landau's opinions to be highly probative and that he gave them "great weight" (AR at 260), because the ALJ did not directly address the MRI report in his decision, he failed to comply with the remand order.   (AR at 303).

To the extent the ALJ adopted Dr. Landau's opinion, Dr. Landau, as stated above, found that the October 1, 2002 MRI report was contradicted by normal test results showing no radiculopathy or evidence of significant neurological involvement.   (AR at 282).   Dr. Landau further opined that plaintiff's neck pain could be caused by her degenerative arthritis, which the ALJ noted in his decision.   (AR at 260).   His findings were based on a review of all the medical records.   (AR at 282).   Ultimately, the ALJ found that Dr. Laudau's opinion was well-reasoned, consistent with the medical record, and highly probative.   Accordingly, he gave the opinion "great weight." (Id.).   This Court also finds that the ALJ's reliance on Dr. Landau's opinion was proper.   Thus, although the ALJ failed to address the MRI report in his decision, the ALJ's failure to do so was harmless because even if the ALJ had stated that he was rejecting the MRI's results, he properly relied on Dr. Landau's opinion.   See Morgan v.

<u>Apfel</u>, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."); <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 434 (9th Cir. 1988) (applying harmless error standard of review to ALJ's decision and refusing to remand where error was harmless); <u>Curry</u>, 925 F.2d at  1129 (harmless error rules applies to review of administrative decisions relating to disability); <u>Booz v. Secretary of Health and Human Services</u>, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (adopting rule that evidence is sufficiently material to require a remand "only where there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him").

**2.    The ALJ's Review of the Medical Records Regarding Other Impairments**

Plaintiff also alleges that the ALJ disregarded evidence in her medical records regarding pain, numbness, and weakness in her left upper extremity, gastroesophageal reflux disease, and sleep apnea. The ALJ need not discuss all evidence presented to him. He must only explain why "significant probative evidence has been rejected." <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Plaintiff's medical records (complaints, physician notes, and test results) show that plaintiff was experiencing these conditions to varying degrees (AR at 168, 175, 218, 227, 229, 314, 327, 226, 337, 345). But none of the physician reports suggest that plaintiff was disabled as a result of any of these conditions. For example, while the medical records note that plaintiff may suffer from sleep apnea

(AR at 168, 175), the ALJ properly noted that plaintiff had never been evaluated or treated for the condition (AR at 260).

"The mere existence of an impairment is insufficient proof of disability. 'A claimant bears the burden of proving that an impairment is disabling.'" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)(quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(internal cite omitted). In the instant case, plaintiff has not established that her pain, numbness, weakness in her left upper extremity, gastroesophageal reflux disease, and sleep apnea constitute disabling impairments. As such, the ALJ did not err when he failed to address the existence, or possible existence, of these conditions.

**B.**   **THE ALJ'S CONSIDERATION OF THE VOCATIONAL EVIDENCE**

Plaintiff claims that the ALJ failed to properly consider and explain the weight he attributed to the vocational evidence. First, plaintiff contends that the ALJ did not consider the vocational expert's testimony that a person missing four hours per week on an unpredictable basis would not be able to find work. Second, plaintiff claims that the ALJ failed to reconcile the differing opinions of the vocational experts who testified at the original hearing and the hearing after remand. Plaintiff claims that these omissions constitute error.

**1.**   **Vocational Expert's Response to Hypothetical**

At the second hearing, counsel for plaintiff asked the vocational expert, Mr. Mas, to opine on the functional capacity of someone who must leave her work station up to four hours a week due to pain, fatigue, coughing or other problems. (AR at 293). Plaintiff claims that the ALJ failed to consider the vocational expert's response,

which was that such a person would be completely precluded from employment if she were absent from her job four hours a week due to various reasons. Earlier in the hearing, the ALJ had asked the vocational expert what the impact on work would be for someone who had coughing spells that lasted five minutes once or twice a day. In that case, Mr. Mas stated that there would only be a "25 percent erosion of the market." (AR at 290). Based on the latter opinion, the ALJ determined that plaintiff could return to her past relevant work as a telemarketer. (AR at 261). At the August 25, 2004 hearing, Dr. Landau testified that, if plaintiff stopped smoking, her coughing spells would be manageable with cough suppressants. (AR at 289-90). Moreover, the length and duration of the coughing spells in the ALJ's hypothetical were considerably less than the four hours per week that plaintiff's counsel posed in his hypothetical. (AR at 293-94). The ALJ relied on Mr. Mas' response to his hypothetical in opining that plaintiff could return to her past work as a telemarketer. (AR at 261).

In order for a vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995). While the ALJ need not include every alleged impairment in his hypothetical, he must make specific findings explaining his rationale for disbelieving any subjective complaints that are not included. Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). Here, the ALJ identified at least two reasons why he rejected plaintiff's complaints concerning her coughing and breathing problems. The ALJ

noted that plaintiff's treatment had been routine, conservative, and infrequent.  Additionally, plaintiff had not stopped smoking.  (AR at 261).  These factors, the ALJ found, warranted a less restrictive functional capacity.  Because he made specific findings supporting his opinion, the ALJ did not err when he failed to include in his hypothetical to the vocational expert a scenario where a claimant would be absent four hours a week due to problems.[1]

**2.  <u>Reconciling the Testimony of Two Vocational Experts</u>**

Plaintiff also contends that the vocational experts at the two hearings gave inconsistent opinions and that such differences needed to be reconciled.  At the original hearing on November 19, 2002, the ALJ posed the following hypothetical to the vocational expert, Mr. Ey:

> [L]et's suppose that there's an individual with the claimant's prior work history and 45-years-old and education through the 11th grade, who is limited to a light range of, I'm sorry, limited to sedentary range of lifting....  Plus the lifting with the right hand, no problems with the right hand.  And let's say have [sic] to be a sit/stand job.  There's no extreme movements of the head to extreme positions.  Have to be able to lie down during the lunch break.  With these limitations, could someone perform the claimant's prior work, telephone solicitation?

---

[1] At the hearing, plaintiff testified that in her previous telemarketing job, she would have to excuse herself two to four times a day because of coughing spells.  (AR at 51).  Her counsel later asked her if she would have a difficult time sitting up in a chair for four hours, to which plaintiff responded she could not sit for that length of time.

(AR at 56).   Mr. Ey opined that such a hypothetical individual could not perform her past work.   (Id.).   But Mr Ey did testify that plaintiff could work as a taxi dispatcher.   (AR at 56-57).   When the ALJ further limited the individual in his hypothetical to simple, repetitive tasks, Mr. Ey testified that the hypothetical individual could work as an assembler of small products and other assembly jobs, such as a sub-assembler of electrical equipment.   (AR at 57).

At the hearing following the remand on August 25, 2004, the ALJ posed the following hypothetical to a different vocational expert, Mr. Mas:

> Mr. Mas, let's suppose an individual who is 47 years old and has an education through the 11th grade but no GED, not illiterate and suppose she's limited to being on her feet no more than a total of two hours out of eight.  Sitting would be no more than six hours out of eight with normal breaks.  Lifting and carrying would be 20 pounds occasionally, 10 pounds or less frequently, and can only occasionally stoop and bend. She can climb stairs but not ladders, can't work at heights or balance.  She can do occasional neck motion.  No frequent – no more than occasional neck motion.  And she can maintain a fixed neck position only occasionally.  The work environment should be air conditioned and free of excessive[] dust, odors, smoke, fumes and other inhaled pollutants no more than you'd find in an air-conditioned environment such as this office.   Now with those limitations, could

someone perform the job of a telemarketer?
(AR at 287-88). Mr. Mas opined that such a hypothetical individual could work as a telemarketer. (AR at 288). The ALJ then added the additional limitation of "once or twice [plaintiff] might have coughing spells that would last up to five minutes." (AR at 290). Mr. Mas responded that there would be a 25 percent erosion in the market given the additional limitation. (<u>Id.</u>). In his decision, the ALJ did not address the discrepancies between Mr. Ey's opinion that plaintiff could not return to her past work as a telemarketer and Mr. Mas' opinion that plaintiff could work as a telemarketer.

Plaintiff contends that the ALJ's failure to reconcile the difference in opinions of the two vocational experts constitutes error. As the Commissioner notes, the vocational experts gave different responses, in part, because the hypotheticals were not identical. In Mr. Ey's hypothetical, the ALJ presented an individual who was limited to a sedentary range of lifting, with a sit/stand job, and who needed the opportunity to lie down during lunch breaks. Mr. Ey specifically testified that the sit/stand limitation in the ALJ's hypothetical precluded the hypothetical individual from working as a telemarketer. (AR at 56). In contrast, Mr. Mas' hypothetical involved an individual who was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently and being on her feet for two hours in an eight hour day. The hypothetical posed to Mr. Mas did not include the sit/stand limitation given to Mr. Ey. Given the marked differences in the hypotheticals presented, there is no difference in opinion to reconcile. Thus, the ALJ did not err in his review of the vocational evidence.

**C.   THE ALJ'S CONSIDERATION OF PLAINTIFF'S SUBJECTIVE COMPLAINTS AND CREDIBILITY**

Finally, plaintiff contends that the ALJ failed to consider plaintiff's subjective complaints and assess her credibility. First, plaintiff claims that the ALJ failed to specify which allegations of pain he found not credible. Second, plaintiff claims that the ALJ's discussion of plaintiff's credibility does not apply the factors mandated by Social Security Ruling 96-7P. Third, plaintiff contends that the ALJ did not state clear and convincing reasons for rejecting plaintiff's testimony.

**1.   Specific Reasons for Rejecting Plaintiff's Credibility**

First, plaintiff claims that the ALJ failed to specify which allegations of pain he found not credible. "It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)(citing Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988), rev'd on other grounds upon reh'g, 859 F.2d 1396 (9th Cir. 1988)). An ALJ's reasons for discrediting a claimant's testimony must be sufficiently specific for the reviewing court to assess whether the decision was impermissibly arbitrary. Bunnell v. Sullivan, 947 F.2d 341, 345-56 (9th Cir. 1991).

Here, the ALJ rejected plaintiff's testimony as to the complaints regarding plaintiff's neck pain and pulmonary problems with coughing and breathing. (AR at 261). In support of his rejection, the ALJ cited plaintiff's routine, conservative, and infrequent medical treatment; plaintiff's refusal to mitigate her health problems by not

smoking and losing weight; and the fact that plaintiff's problems were lessened or corrected by medication and surgery.  (AR at 261).  The Court finds that the ALJ was sufficiently specific in rejecting plaintiff's credibility.

**2.   The ALJ's Discussion of Social Security Ruling 96-7p**

Plaintiff also claims that the ALJ's discussion of plaintiff's credibility does not apply the factors mandated by Social Security Ruling 96-7p.  Social Security Ruling 96-7p provides guidelines that the ALJ must consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements:

1.   The individual's daily activities;

2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.   Factors that precipitate and aggravate the symptoms;

4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See Social Security Ruling 96-7p.  Here, the ALJ specifically noted that plaintiff had an inactive lifestyle that was purely voluntary

1   (AR at 260); described plaintiff's medical history and treatment

2   regarding her pain (AR at 258-60); enumerated factors, such as smoking

3   and obesity, that aggravated the symptoms (AR at 260-61); and listed

4   the medications plaintiff took, such as Vicodin, Robaxin, and

5   Robitussin, to alleviate pain or other symptoms (AR at 259). Contrary

6   to plaintiff's contentions, the ALJ followed the guidelines outlined

7   in Social Security Ruling 96-7p.

8        **3.   Clear and Convincing Reasons**

9        Although plaintiff contends that the ALJ did not state clear and

10  convincing reasons for rejecting plaintiff's testimony, for the

11  reasons stated above, the Court finds that the ALJ's reasons were

12  sufficiently clear and convincing.

13       **a.   Medical Treatment**

14       The ALJ stated he rejected plaintiff's credibility based on the

15  fact that she received conservative and infrequent medical treatment.

16  (AR at 261).  An ALJ may reject a claimant's allegations of extreme

17  pain where the patient uses only mild pain medication.  See Orteza v.

18  Shalala, 50 F.3d 748, 750 (9th Cir. 1994) (affirming ALJ's decision to

19  reject patient's credibility and noting that plaintiff "has not

20  required prescription pain medication"); see also Tidwell v. Apfel,

21  161 F.3d 599, 602 (9th Cir. 1998) (rejecting plaintiff's credibility

22  and noting pain did not require prescription medications); Ruiz v.

23  Apfel, 24 F. Supp. 2d 1045, 1048 (C.D. Cal. 1998) (rejecting

24  plaintiff's credibility and stating, "More particularly, [the ALJ]

25  remarked that [plaintiff] had not been prescribed narcotic pain

26  medication, as would be expected if she suffered from intense, chronic

27  pain."); Matthews v. Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993)

28

(permissible credibility factors include limited treatment and minimal use of medications).

An ALJ may also rely on a claimant's infrequent medical treatment as a factor in rejecting a claimant's credibility. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)(ALJ may rely on claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); Bunnell, 947 F.2d at 346 (identifying claimant's failure to seek medical treatment as proper reason to discredit claimant's testimony); Fair, 885 F.2d at 603 (9th Cir. 1989) (listing proper reasons to discredit claimant's testimony and stating, "Another such form of evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.").

Plaintiff currently takes various medications for her impairments. In a Disability Report dated April 23, 2001, plaintiff reported using the following medications: Azmacort Inhaler, Albuterol Sulfate, Nasonex, Lescol, Promethazine with Codine Syrup, and a Nebulizer Machine. (AR at 120, 122). On August 14, 2003, medical records indicate that plaintiff was taking Norco, Albuterol, Soma, and Plavix. (AR at 350). On September 29, 2003, plaintiff's medical records indicated that she was taking Zocor, Plavix, Protonix, ASA, Norco, Elavil, Robaxin, and Albuterol. (AR at 348). On November 13, 2003, plaintiff's records reported her taking Robaxin, Protonic, Norco, ASA, and Ibuprofen.  (AR at 347). On December 6, 2004, plaintiff's medical records listed the following medications:  Soma, Albuterol, Protonix, Plavix, Naprosyn, ASA, and Zocor.  (AR at 346). These medications were prescribed by plaintiff's physicians.

Plaintiff's treatment records indicate that she has seen a physician regularly the past few years.  Plaintiff's medical records indicate that she sought medical treatment once in 1999 (AR at 192), twice in 2000 (AR at 198, 202), nine times in 2001 (AR at 164, 168, 173, 174-76, 193, 194, 195), 19 times in 2002 (AR at 214, 215, 216, 217, 218, 219, 220, 221, 225, 226, 227, 228-29, 232, 240, 242, 243, 342), seven times in 2003 (AR at 334-35, 336-37, 338, 339, 347, 348, 350), and three times in 2004 (AR at 313-15, 316-24, 346). Plaintiff's treatment included visits to her physician, emergency room treatment, and special tests, such as MRIs and nerve testing.  The test results, however, were generally unremarkable.  (AR at 173, 192, 198, 202, 203, 228,-29, 232, 243).  As noted by the ALJ and Dr. Landau, the October 1, 2002 MRI report showed degenerative disc disease.  (AR at 227).  Dr. Landau, however, noted that an electrodiagnostic study performed in September of 2002 indicated no radiculopathy, a finding he found to offset the results of the October 1, 2002 report.  (AR at 282-83).  As previously noted, the ALJ adopted Dr. Landau's expert opinion.  (AR at 260).  Other than the MRI report, plaintiff's complaints primarily consisted of aches and pains, sore throats, swelling, and other non-disabling impairments.  (AR at 193, 194, 195, 214, 215, 216, 217, 218, 219, 221, 226).  Thus, while plaintiff's medical records indicate that she regularly sought treatment, test results and physician reports generally revealed unremarkable results.

While plaintiff sought treatment regularly, the frequency of her visits appear to be unwarranted due to the normal test results.  Accordingly, substantial evidence supports the ALJ's decision to

1    reject plaintiff's credibility based on her routine and conservative

2    medical treatment.

3                    **b.   Refusal to Quit Smoking or Lose Weight**

4         The ALJ cites plaintiff's failure to quit smoking and lose weight

5    as contributing factors to her medical problems. (AR at 261).  The ALJ

6    noted that plaintiff continues to smoke, which affects her chronic

7    pulmonary problems.  (Id.).  The ALJ also cited to plaintiff's obesity

8    and her inactive lifestyle, which he described as "purely voluntary,"

9    as a contributing cause of her orthopedic problems.  (Id.).

10   Plaintiff's failure to quit smoking and to lose weight, the ALJ

11   contends, are inconsistent with her contention that she has an

12   incapacitating medical condition.

13        An ALJ may cite a claimant's failure to follow a doctor's

14   recommendation to stop smoking as a legitimate reason to discredit a

15   claimant's testimony.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

16   1989)(listing proper reasons to discredit claimant's testimony and

17   stating, "Another such form of evidence is an unexplained, or

18   inadequately explained, failure to seek treatment or follow a

19   prescribed course of treatment"); see also Smolen, 80 F.3d at 1284

20   (ALJ may rely on claimant's "unexplained or inadequately explained

21   failure to seek treatment or to follow a prescribed course of

22   treatment").  But, in order to do so, the ALJ must first inquire

23   whether plaintiff would have been able to return to work if plaintiff

24   had followed the prescribed treatment.  See Burnside v. Apfel, 223

25   F.3d 840, 843-44 (8th Cir. 2000) (finding that ALJ erred in citing

26   claimant's failure to stop smoking without first conducting inquiry

27   about whether quitting would have restored claimant's "ability to work

28

1    or [would have] sufficiently improve[d] his condition"); <u>see also</u>

2    <u>Shramek v. Apfel</u>, 226 F.3d 809, 812-13 (7th Cir. 2000) (en banc)

3    (describing ALJ's citation to claimant's failure to quit smoking

4    without first inquiring whether quitting would have restored

5    claimant's ability to work as "a misuse of the non-compliance

6    regulation") (<u>citing</u> 20 C.F.R. 404.1530(a)).

7         Here, the ALJ properly inquired and found that plaintiff's

8    smoking habit negatively impacted her ability to work.  Plaintiff

9    contended that she could no longer work as a telemarketer due to her

10   breathing problems and coughing spells.  (AR at 115).  At the August

11   25, 2004 hearing, Dr. Landau testified that plaintiff's frequent

12   coughing spells were a natural result of her cigarette smoking.  (AR

13   at 288).  Upon further questioning by the ALJ, Dr. Landau testified

14   that if plaintiff quit smoking, "I would expect the coughing to be

15   much improved or manageable with cough suppressant."  (AR at 290).

16   Thus, the ALJ received expert testimony that plaintiff would be able

17   to manage her condition if she quit smoking.  As such, the ALJ

18   committed no error in citing plaintiff's smoking habit as a ground for

19   rejecting the credibility of her contentions that she suffers from

20   disabling medical conditions.

21        As for her obesity, Social Security Regulation 02-01p defines

22   obesity as a "complex, chronic disease. . . ."  SSR 02-01p.  Likewise,

23   the Ninth Circuit recently recognized that obesity constitutes an

24   independent medical condition, rather than just a symptom of other

25   existing impairments.  <u>Celaya v. Halter</u>, 332 F.3d 1177, 1181 (9th Cir.

26   2003) ("[The plaintiff's] obesity was not merely a symptom of either

27   of her diagnosed impairments (i.e., diabetes and hypertension), but an

28

independent condition."). Moreover, an ALJ is required to consider the effects of a claimant's obesity in determining the claimant's disability status. Id. at 1184 (affirming district court's order remanding ALJ's decision where "ALJ failed to consider the obvious factor of claimant's obesity").

Here, in rejecting plaintiff's credibility, the ALJ noted plaintiff's lack of attempt to lose weight, a result of her inactive lifestyle. (AR at 261). The ALJ further found that plaintiff's obesity contributed to her orthopedic problems and to her fatigue. Thus, to the extent that the ALJ cited plaintiff's obesity as a reason to reject plaintiff's credibility, the ALJ erred in doing so. The fact that plaintiff suffered limitations from her obesity does not necessarily detract from plaintiff's credibility.

Defendant cites to no authority suggesting that suffering symptoms from a recognized disease such as obesity is a basis to reject a claimant's credibility. Indeed, based on plaintiff's height and weight, it is not surprising that plaintiff's obesity limited her physical abilities. In her most recent medical record, dated July 13, 2004, plaintiff stood 5 feet 1½ inches and weighed 220 pounds. (AR at 321).

Social Security Regulation 02-01p admonishes ALJs from routinely citing a claimant's "failure to follow a prescribed treatment for obesity to deny or cease benefits." SSR 02-01p. Indeed, the SSA permits an ALJ to cite a claimant's "failure to follow a prescribed treatment" in obesity cases only when a treating source has prescribed a qualifying treatment plan. The SSA also explicitly states that a physician's recommendation to lose weight does not qualify as a

1   prescribed treatment plan: "The treatment must be prescribed by a

2   treating source, as defined in our regulations at 20 C.F.R. §§

3   404.1502 and 416.902, not simply recommended.   A treating source's

4   statement that an individual 'should' lose weight or has 'been

5   advised' to get more exercise is not a prescribed treatment." SSR 02-

6   01p.  Here, none of plaintiff's doctors prescribed a "treatment plan"

7   for her obesity.   Consequently, the ALJ erred in citing plaintiff's

8   failure to lose weight as a ground for rejecting her credibility.

9                **c.   Symptoms Controlled by Medication**

10      Finally, the ALJ rejected plaintiff's testimony that she suffers

11  from an incapacitating condition on the basis that her pain appears to

12  be controlled by medication.  (AR at 261).   The ALJ also noted that

13  plaintiff's carotid artery condition was corrected by surgery. (<u>Id.</u>).

14      An ALJ need not believe every allegation of disabling pain.  <u>See</u>

15  <u>Orteza</u>, 50 F.3d at 750.  Where an ALJ finds a claimant's claims of

16  disabling pain not entirely credible, and there is no evidence of

17  malingering, the ALJ must set forth legally permissible, specific,

18  clear and convincing reasons for doing so.  <u>See</u> <u>Dodrill</u>, 12 F.3d at

19  918 ("If there is medical evidence establishing an objective basis for

20  some degree of pain and related symptoms, and no evidence

21  affirmatively suggesting that the claimant was malingering, the

22  Secretary's reason for rejecting the claimant's testimony must be

23  'clear and convincing,' and supported by specific findings")

24  (<u>citations</u> <u>omitted</u>).   "The ALJ must specifically identify what

25  testimony is credible and what testimony undermines the claimant's

26  complaints."  <u>Morgan v. Commissioner of the Social Security Admin.</u>,

27  169 F.3d 595, 599 (9th Cir. 1999).

28

1       Here, while plaintiff's condition may be helped by medication,

2 the Court does not find any evidence to support the ALJ's contention

3 that the use of the medications discredit her statements that she

4 suffers from disabling pain.  At the hearing on November 19, 2002,

5 plaintiff testified that she is "in pain all the time."  (AR at 45).

6 When asked where she feels pain, plaintiff responded, "Everywhere, I

7 told you in my neck, in my legs, in my arms."  (AR at 54).

8 Plaintiff's counsel further asked his client:

9     Q    Do you think you could, you could, even with pain medicine,

10        do you think you could go over four hours without lying

11        down?

12     A    No, because then I take pain medication, then I get

13        tired.... I get too groggy and I get, I'm not alert enough

14        to work.

15 (Id.).  Thus, plaintiff testified that even with pain medication, she

16 is unable to work.  Medical records, moreover, do not indicate that

17 plaintiff reported that her condition was improved by pain medication

18 to a point where she could hold employment.  Thus, while the pain

19 medications may have improved plaintiff's condition, the Court finds

20 this proffered reason insufficient to reject her credibility.

21       In sum, while the Court finds that the ALJ should not have

22 rejected plaintiff's credibility on the basis of her obesity and the

23 fact that her condition improved with pain medication, the Court finds

24 that the ALJ's other grounds, namely plaintiff's routine and

25 conservative treatment as well as her failure to quit smoking,

26 constituted sufficient grounds for rejecting plaintiff's credibility.

27 As such, the Court affirms the ALJ's decision.

28

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the proper legal standards.  The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY**


DATED: January 30, 2006

                                        _____
                                        JENNIFER T. LUM
                                        UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PAULA LABAU,                          )        Case No. EDCV 04-1460-JTL
                                      )
               Plaintiff,             )
                                      )
                                      )        **J U D G M E N T**
          v.                          )
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of Social                )
Security Administration,              )
                                      )
               Defendant.             )
_____  )

     In  accordance  with  the  Memorandum  Opinion  and  Order  filed
herewith,

     IT IS HEREBY ADJUDGED that the decision of the Commissioner of
Social  Security  is  affirmed  and  this  action  is  dismissed  with
prejudice.

DATED: January 31, 2006

                              _____/s/_____
                              JENNIFER T. LUM
                              UNITED STATES MAGISTRATE JUDGE